Rudolph **KARAS** et al.

v.

**UNITED STATES POSTAL SER-
VICE** et al.

**Civ. A. No. 72–519.**

United States District Court,
W. D. Pennsylvania.

May 1, 1973.

Michael Hahalyak, Pittsburgh, Pa.,
for plaintiffs.

Richard L. Thornburgh, U. S. Atty.,
Pittsburgh, Pa., for United States Post-
al Service, and others.

OPINION AND ORDER

GOURLEY, Senior District Judge.

This is a civil non-jury proceeding in
which plaintiffs, former postal guards,
are seeking declaratory relief requiring
defendants to afford them the opportu-
nity of becoming members of the newly
created Postal Security Force. Basical-
ly, it is plaintiffs' contention that they
were arbitrarily denied positions on the
new force in spite of their qualifications
and many years of experience. Unques-
tionably, jurisdiction exists pursuant to
the Declaratory Judgment Act, 28 U.S.
C.A. § 2201.

There is no substantial dispute re-
garding the facts, which may be briefly
stated. Plaintiffs were employed as
guards under the supervision of the
Pittsburgh Postmaster. In 1971, a new
Postal Security Force was created and
implemented under the control of the
Postal Inspection Service. Prior to this

implementation, the union representing the plaintiffs and the Post Office Department entered into an agreement on April 16, 1970, whereby all guards such as plaintiffs would be given first consideration for the new job openings to the extent that they satisfied the criteria and possessed the qualifications to be set therefor by the Postal Service.

To this end, plaintiffs were subject to extensive investigations and medical exams, and they were personally interviewed to determine their eligibility and whether they could satisfy the standards which were established. These standards included requirements that members be at least five feet, six inches in height, and have "weight in proportion to height." Successful applicants were also required to "have unquestioned honesty, reliability, and integrity"; and "the ability to meet and deal with the public in a courteous and tactful manner and the ability to work in stress situations."

During the interviews which were conducted, plaintiffs were led to believe that if they opted for the new security force, but failed to successfully complete a three-week training session, they would have no right to return to their former jobs. However, it was made clear to them that there would be no loss in their rate of pay if they decided to remain postal employees instead of pursuing these new jobs. Plaintiffs Karas, Highgate, and Hughes did not meet the height requirements indicated above and were accordingly advised of their disqualification. Plaintiffs Kish, Mazza, Miller, and Weber were found not qualified on the basis of their individual work records, personal background, or general lack of suitability; they were unable to satisfy the non-physical prerequisites for the job as set forth in the standards indicated above.

All the remaining plaintiffs withdrew from the selection process and were undeniably motivated to do so out of fear that they would lose the security of their existing postal employment.

There is no question that a federal agency has the "right to prescribe the qualifications of its employees and to attach conditions to their employment." Friedman v. Schwellenbach, 81 U.S.App.D.C. 365, 159 F.2d 22, 24 (1946). Certainly actions taken in regard to personnel are generally within the discretionary authority of a federal agency. Reece v. United States, 455 F. 2d 240 (9th Cir. 1972). Moreover, the United States Postal Service has been given explicit statutory authority pursuant to the Postal Reorganization Act to exercise its discretion in matters related to hiring, promotion, transfer, and assignment of postal employees.[1] Equally significant, this act provides that Postal Service decisions respecting personnel determinations shall be consistent with applicable laws, regulations, or collective bargaining agreements.[2]

It seems clear, therefore, that the action taken with respect to those plaintiffs who did not satisfy the qualifications established for the new positions was proper. However, as to the four plaintiffs (Duffek, Rollins, Snoddy, and Walton) who were induced to withdraw their applications, the action of the Postal Service was highly improper. The agreement of April 16, 1970, to give the former guards first consideration for the new security force was breached when these men withdrew from consideration. Unquestionably they were subject to intimidation and indirect duress and coercion when they failed to exercise the privileges and rights to which they were entitled.

In the considered judgment of the Court these four plaintiffs should be af-

---

1. 39 U.S.C. § 1001(e)(2) provides: "The Postal Service shall have the right . . . to hire, promote, transfer, assign, and retain officers and employees in positions within the Postal Service, and to suspend, demote, discharge, or take other disciplinary action against such officers and employees."

2. 39 U.S.C.A. § 1001(e).

forded an opportunity to reapply for a position on the new security force and to undergo the period of training created therefor without fear of retribution and without intimidation.

Findings of fact and conclusions of law have not been separately stated but are included in the body of the foregoing Opinion as specifically authorized by Rule 52(a) of the Federal Rules of Civil Procedure.

An appropriate Order is entered.